UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-20628-CR-DIMITROULEAS

UNITED STATES OF AMERICA,
       **Plaintiff,**

v.

LUCY SEGUROLA,
       **Defendant.**

_____/

## REPORT AND RECOMMENDATION

On or about November 8, 2011, court-appointed defense counsel Howard J. Schumacher ("Counsel") submitted a voucher application numbered FLS 09 2572 with appended time sheets requesting $85,528.60 as final payment for attorney's fees and costs pursuant to the Criminal Justice Act (the "CJA"). Counsel also supplied detailed time sheets and an Ex-Parte Motion and Memorandum in Support of CJA Attorney's Fees That Exceed Statutory Cap (the "Ex-Parte Motion") in support of his voucher application. Counsel has represented Defendant Lucy Segurola ("Defendant") for several years from his appointment on August 5, 2009 until the present.

Counsel seeks $85,528.60 in his application, an amount which exceeds the $9,700.00 statutory maximum allowed for representation in non-capital felony cases under the CJA. As a result, United States District Court Judge William P. Dimitrouleas entered an Order of Reference **[DE # 1270]** referring the voucher application to the undersigned for a Report and Recommendation as to whether the fees requested by Counsel are appropriate. *See* 28 U.S.C. § 636(a); *see also* United States District Court for the Southern District of Florida Magistrate Judge Rules.

## Criminal Justice Act and Guidelines for Administering
## the Criminal Justice Act

The United States Judicial Conference developed the Guidelines for Administering the CJA and Related Statutes (the "Guidelines") to assist courts in the application of the provisions of the CJA. *See In re Burger,* 498 U.S. 233, 234, 111 S.Ct. 628 (1991). In the Guidelines, judges are "urged to compensate counsel at a rate and in an amount sufficient to cover appointed counsel's general office overhead and to ensure adequate compensation for representation provided." *See* Section §630.20 of the Guidelines.

The CJA at 18 U.S.C. §3006A(d)(1) provides that at the conclusion of CJA representation, an appointed attorney shall be compensated for time expended in court and for time "reasonably expended out of court" and shall be reimbursed "for expenses reasonably incurred." The district court, as the body empowered to "fix" CJA appointed counsel compensation, has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time. 18 U.S.C. §3006A(d)(5); *U.S. v. Griggs,* 240 F.3d 974 (11th Cir. 2001). In order for the recommended fee amount to exceed the statutory maximum, however, the district court *must* first certify that the case involves "complex" or "extended" representation. 18 U.S.C. §3006A(d)(3). Second, the district court must conclude that the amount is necessary to provide Counsel with fair compensation.

A case may be considered "complex" if the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case. *See* Section §230.23.40(b) of the Guidelines. A case may be considered "extended" if more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings. *Id.*

-2-

## DISCUSSION

### Counsel's Representation in This Case
### Was Both Complex and Extended

Under the Guidelines, in order to approve compensation in an amount in excess of the statutory maximum, I must first find that the representation was either complex or extended. Counsel's representation of Defendant was both complex and extended.

First, the very nature and number of charges involved in this case required Counsel to expend more time, skill and effort than normally required in the average case. The grand jury issued an Indictment **[DE # 3]** in this matter on July 23, 2009. The original Indictment contained twenty (20) counts.

The government alleged that Defendant and the codefendants were involved in a mortgage fraud conspiracy scheme to recruit straw buyers to purchase residential properties. The purpose of the scheme was to obtain money from various banks and lending institutions to finance the purchase of the properties through materially false representations and fraudulent pretenses concerning the true purchasers of the homes.

The scheme required the straw buyers to pose as home buyers when, in fact, the straw buyers were not to be either the true owners of the homes or responsible for making the monthly mortgage payments. Rather, other unnamed third persons were to be the true owners of the properties. In the scheme, the straw buyers would purchase the homes at highly inflated prices by obtaining mortgages on the properties. The true owners of the properties would fail to make payments on the mortgages and default on the loans. The various banks and lending institutions would be forced to foreclose on the properties, suffering large losses.

The government charged Defendant with conspiracy to commit mail and wire fraud (Count I) as well as wire fraud (Count XI). Defendant faced a maximum sentence of twenty (20) years imprisonment for Count I and twenty (20) years imprisonment for Count XI.

Second, the "discovery was voluminous and included documents that numbered in the tens of thousands. Additional *Jencks* materials, including transcripts from the first trial before Judge Graham, numbered in excess of fifteen hundred pages." (Ex-Parte Motion at 2). The sheer volume of documents which Counsel had to review in order to effectively represent Defendant rendered this case more complex than the average case.

Third, the representation of Defendant required Counsel to attend a number of hearings and status conferences in this case. Plaintiff made appearances at three arraignment proceedings (8/6/09, 6/2/10 and 6/4/10) and a bond hearing (8/5/09). Counsel argued at these hearings in addition to appearing at a calendar call (7/9/10) and six status conferences (9/4/09, 10/7/09, 11/4/09, 12/16/09, 1/13/10 and 2/10/10).

Fourth, this case was more complex than the average case because Defendant entered a not guilty plea and proceeded to trial. The trial began on July 20, 2010 and ended on August 6, 2010. "Trial lasted thirteen calendar days, including jury deliberations." (Ex-Parte Motion at 1).

It is clear from the record that the legal and factual issues in this case were unusual. Consequently, I conclude that this matter was complex because it required the expenditure of more time, skill and effort by Counsel than would normally be required in the average case. I also find that the second factor which would allow the Court to certify compensation in an amount in excess of the statutory maximum - that representation was extended - is

-4-

also met here.

The grand jury returned the original Indictment in this matter on July 23, 2009. **[See DE # 3]**. Defendant was arrested on July 28, 2009. The grand jury returned a Superseding Indictment **[DE # 743]** on May 27, 2010.  "This was a multi-defendant mortgage fraud indictment, whose size required the Court to sever out seven defendants for an initial trial before the Hon. Donald Graham and an additional seven defendants to be tried in Miami by the Hon. William P. Dimitrouleas." (Ex-Parte Motion at 1).

Defendant was tried before Judge Dimitrouleas.  The trial commenced in July 2010, nearly one (1) year after Defendant was arrested.  The trial ended in August 2010.  The jury acquitted Defendant on Count XI but found Defendant guilty on Count I. **[DE # 902]**. Defendant was sentenced on October 22, 2010, one (1) year and four (4) months after Defendant was initially arrested.   Defendant was sentenced to thirty (30) months imprisonment and ordered to pay restitution in the amount of $634,253.57.  **[DE # 1005]**.

Counsel's involvement in this case required more time for processing than the average case, involving one trial and lasting well over a year.  As a result, the representation of Defendant in this case is properly considered extended.  I must now review the voucher to determine the appropriate amount for which Counsel should be compensated in excess of the $9,700.00 statutory maximum.

### *Voucher Amount - Administrator's Review*

The Court's CJA administrator first reviewed the voucher for compliance with the Guidelines and mathematical accuracy prior to my review. Counsel requested compensation

for 100.5 in-court hours totaling $12,025.00.  The CJA administrator slightly increased the amount of Compensation sought by Counsel to $12,498.00.

The CJA administrator also reviewed the 603.7 out-of-court hours sought by Counsel. Counsel sought compensation for 41.8 hours for "Interviews and conferences", 477.9 hours for "Obtaining and reviewing records" and 40.2 hours for "Legal research and brief writing". Counsel also sought 42.1 hours of "Travel time."  Lastly, Counsel sought 1.7 hours of compensation for "Investigative and Other work."

Counsel sought $72,171.00 for his out-of-court hours.  The CJA administrator increased the total amount sought for out-of-court hours to $72,282.50. Counsel also sought $859.60 in "Travel Expenses".  The CJA administrator slightly decreased this figure to $800.80. After making these adjustments, the CJA administrator concluded that the overall total amount documented by Counsel in the voucher increased slightly from $85,528.60 to $85,581.30.

**In-Court Hours**[1]

Counsel sought 100.5 in-court hours totaling $12,025.00.  The CJA administrator increased this figure slightly to $12,498.00.  Although the vast majority of Counsel's time entries are appropriate, Counsel included two entries that are questionable:

| | | |
|---|---|---|
| 8/5/10 | Attend Trial (Jury Deliberations) | 7.50 hours |
| 8/6/10 | Attend Trial (Jury Deliberations) | 7.50 hours |

---

[1]

The undersigned defers to the Court Clerk to verify all in-court time and expense allowances.

I invited Counsel to meet in Chambers on February 1, 2012 to discuss these two entries as well as other troubling entries. Counsel explained that the two entries above represented the fifteen hours Counsel spent at the federal courthouse awaiting the jury's verdict. Counsel explained that because the trial was held in Miami and his office is located in Ft. Lauderdale. Counsel further explained that Judge Dimitrouleas required all counsel to remain within fifteen minutes of the courthouse while the jury was deliberating, therefore he was unable to return to his office in Ft. Lauderdale.

Counsel conceded, however, that he was able to work on other cases during the time spent waiting for the jury's verdict. Accordingly, I recommend that Counsel be reimbursed for only part of the time he spent awaiting the jury's deliberations - a total of 4.0 hours. With this reduction, I recommend that Counsel be compensated a total of $11,123.00 for his in-court hours.

### Out-of-Court Hours

In the voucher, Counsel sought compensation for a total of 603.7 out-of-court hours. The CJA administrator reviewed the voucher and slightly increased the total amount sought for out-of-court hours to $72,282.50 from $72,171.00.

During my February 1, 2012 meeting with Counsel, I also questioned some entries which Counsel included for time spent dealing with Defendant's family. I conclude that the following entries are not eligible for reimbursement under the CJA:

| | | |
|---|---|---|
| 10/22/10 | Meet with family to explain bond process and collect necessary info | 0.5 hours |
| 10/22/10 | T/C with family re: bond | 0.3 hours |
| 10/23/10 | Meeting with family to arrange for | 0.7 hours |

|  |  | additional surety to post more bond |  |
| --- | --- | --- | --- |
| 10/23/10 | T/C with family re: motion and status | 0.3 hours |
| 10/29/10 | T/C with family to arrange money to be posted | 0.5 hours |
| 10/29/10 | T/C with Judge's chambers re: bond conditions | 0.2 hours |
| 11/01/10 | Meet with client at FDC MIA to obtain signature on new bond pending appeal and wait time | 1.3 hours |
| 11/01/10 | Meet with family to collect checks and signatures | 0.4 hours |
| 11/01/10 | Post bond at Clerk's office | 0.4 hours |
| 11/01/10 | T/C with surety re: staying on bond | 0.2 hours |
| 11/01/10 | Travel time to FDC MIA | 1.5 hours |
| 11/01/10 | Courthouse and wait at Judge's chambers re: bond paperwork | 0.7 hours |

I recommend that the above entries be eliminated because the Supplemental Instructions explain that "[s]ervices of a personal nature, such as assisting the defendant in the disposition of his/her personal property, or providing legal assistance in matters unrelated to the litigation of the case even though incidental to the defendant's arrest, are not compensable." Thus, time spent by Counsel relating to advising the family regarding the posting of an additional bond is not compensable.

Lastly, Counsel incurred a significant amount of time reviewing docket entries in this case. In the voucher, Counsel seeks reimbursement for 477.9 hours spent "Obtaining and

reviewing records."  Counsel also included dozens of pages of time entries for simply

reviewing docket entries, both those entries related to Defendant and those entries that were

solely related to other co-defendants.[2] I have reviewed each of Counsel's entries for docket

review to determine whether said document was related to Defendant.

 I have determined that Counsel spent a total of 60.1 hours reviewing docket entries

that were unrelated to Defendant.  I conclude that Counsel should not be entitled to

---

[2]

In the voucher, Counsel sought compensation for reviewing docket entries on all
of the following dates:

8/5/09, 8/6/09, 8/7/09, 8/8/09, 8/10 /09, 8/11/09, 8/18/09, 8/19/09, 8/21/09, 8/24/09,
8/25/09, 8/26/09, 8/27/09, 9/1/09, 9/2/09, 9/4/09, 9/9/09, 9/10/09, 9/14/09, 9/16/09,
9/17/09, 9/21/09, 9/22/09, 9/23/09, 9/24/09, 9/25/09, 9/29/09, 10/2/09, 10/09/09, 10/10/09,
10/14/09, 10/21/09, 10/29/09, 10/30/09, 11/2/09, 11/3/09, 11/6/09, 11/9/09, 11/10/09,
11/11/09, 11/18/09, 11/19/09, 11/20/09, 11/21/09, 11/23/09, 11/24/09, 11/25/09, 11/30/09,
12/2/09, 12/8/09, 12/9/09, 12/10/09, 12/15/09, 12/16/09, 12/17/09, 12/22/09, 1/4/10,
1/5/10, 1/6/10, 1/7/10, 1/12/10, 1/14/10, 1/16/10, 1/17/10, 1/18/10, 1/19/10, 1/20/10,
1/21/10, 1/22/10, 1/24/10, 1/25/10, 1/26/10, 1/28/10, 1/30/10, 2/3/10, 2/4/10, 2/5/10,
2/8/10, 2/9/10, 2/10/10, 2/12/10, 2/14/10, 2/16/10, 2/17/10, 2/18/10, 2/19/10, 2/23/10,
2/24/10, 3/1/10, 3/2/10, 3/3/10, 3/4/10, 3/8/10, 3/9/10, 3/10/10, 3/11/10, 3/13/10, 3/22/10,
3/23/10, 3/24/10, 3/26/10, 3/27/10, 3/29/10, 3/30/10, 3/31/10, 4/1/10, 4/2/10, 4/5/10,
4/6/10, 4/7/10, 4/8/10, 4/9/10, 4/16/10, 4/19/10, 4/21/10, 4/22/10, 4/23/10, 4/27/10,
4/28/10, 4/29/10, 4/30/10, 5/3/10, 5/5/10, 5/6/10, 5/7/10, 5/10/10, 5/12/10, 5/13/10,
5/14/10, 5/20/10, 5/24/10, 5/26/10, 5/27/10, 5/28/10, 6/1/10, 6/2/10, 6/3/10, 6/4/10, 6/5/10,
6/7/10, 6/8/10, 6/9/10, 6/11/10, 6/16/10, 6/17/10, 6/21/10, 6/23/10, 6/24/10, 6/30/10,
7/1/10, 7/2/10, 7/5/10, 7/6/10, 7/7/10, 7/8/10, 7/12/10, 7/13/10, 7/14/10, 7/15/10, 7/22/10,
7/23/10, 7/27/10, 7/28/10, 7/29/10, 7/30/10, 8/10/10, 8/11/10, 8/12/10, 8/13/10, 8/18/10,
8/19/10, 8/20/10, 8/26/10, 8/30/10, 9/7/10, 9/8/10, 9/15/10, 9/16/10, 9/17/10, 9/23/10,
9/24/10, 9/27/10, 9/28/10, 9/29/10, 10/4/10, 10/5/10, 10/7/10, 10/8/10, 10/12/10, 10/13/10,
10/19/10, 10/20/10, 10/21/10, 10/22/10, 10/25/10, 10/27/10, 10/28/10, 10/29/10, 11/1/10,
11/16/10, 11/17/10, 11/18/10, 11/19/10, 11/22/10, 11/23/10, 11/24/10, 11/29/10, 11/30/10,
12/1/10, 12/2/10, 12/3/10, 12/6/10, 12/7/10, 12/8/10, 12/10/10, 12/11/10, 12/14/10,
12/16/10, 12/20/10, 12/21/10, 12/22/10, 12/27/10, 1/4/11, 1/7/11, 1/10/11, 1/12/11,
1/14/11, 1/21/11, 1/24/11, 1/28/11, 2/3/11, 2/7/11, 2/9/11, 2/14/11, 2/17/11, 2/18/11,
2/21/11, 2/24/11, 2/25/11, 2/27/11, 2/28/11, 3/1/11, 3/4/11, 3/9/11, 4/6/11, 4/8/11, 4/13/11,
4/16/11, 4/18/11, 4/28/11, 5/2/11, 5/9/11, 5/11/11, 5/16/11, 5/20/11, 5/23/11, 5/25/11,
5/31/11, 6/8/11, 6/9/11, 6/16/11, 6/23/11, 6/29/11, 6/30/11, 7/6/11, 7/7/11, 7/8/11, 7/13/11,
7/19/11, 7/27/11, 8/8/11, 8/18/11, 8/31/11, 9/2/11, and 9/14/11.

compensation for the time he spent in this manner.[3] I find, however, that the remaining out-of-court hours (as adjusted by the CJA administrator) in the voucher application are appropriate. Factoring in the deductions listed above, I recommend that Counsel should be paid $64,965.00 for his out-of-court hours.

In making this recommendation, I have been mindful that when considering awards to Counsel under the CJA, courts have long recognized that there is an inherent tension between the policies underlying the CJA: "[o]n the one hand, representing indigent defendants is a form of public service; thus, the [CJA] was never intended to provide full compensation for an attorney's services or to provide fees equal to those charged in private practice. . . . On the other hand, the Act was also intended to provide indigent defendants with meaningful representation by competent counsel". *United States v. Mukhtaar,* 2008 WL 2151798, at * 2 (S.D. N.Y. May 21, 2008) (citations omitted).

As other courts have explained, the CJA "was intended to partially alleviate the financial burden associated with provision of these services which had been traditionally provided pro bono. The spirit of the statute is lost once the CJA representation of indigent defendants loses its essentially pro bono nature." *United States v. Diaz*, 802 F.Supp. 304, 307 (C.D. Cal. 1992) (quoting *United States v. Carnevale*, 624 F.Supp. 381, 383 (D. R.I. 1985)). In considering these principles with respect to the instant case, I conclude that an award of $64,965.00 for out-of-court hours, is fair, although admittedly not full compensation

---

[3]

The United States Court of Appeals for the Eleventh Circuit has explained that "[w]here fee documentation is voluminous, such as in the instant case, an hour-by-hour review is simply impractical and a waste of judicial resources." *Loranger v. Stierheim,* 10 F.3d 776, 783 (11th Cir. 1994). Although I have listed the dates of each of the troublesome entries in the footnote above, I will not specifically describe each of these entries.

for Counsel's services.

### Expenses

Counsel sought $859.60 in "Travel Expenses." The CJA administrator decreased the amount claimed to $800.80. I hereby recommend approval of this reduced amount.

### CONCLUSION

I commend Counsel for his continued professionalism and willingness to take this appointment; the undersigned is appreciative of his efforts. Notwithstanding this appreciation, as I have often quoted, when appropriate and in the spirit of the CJA: "What is commendable, however, is not necessarily compensable." *U.S. v. Smith,* 76 F.Supp.2d 767, 769 (S.D. Texas 1999). It is with this sentiment in mind that I recommend that some of the time incurred by Counsel be considered non-reimbursable.

To be clear, I am not making this recommendation for a lack of appreciation, rather, it is because the courts have the inherent obligation to ensure that claims for taxpayer provided monies are properly spent. Accordingly, I am constricted by the rules established in the Guidelines and in the Supplemental Instructions in awarding Counsel full compensation for all time incurred in this matter.

As I explained above, however, because the representation provided by Counsel to Defendant in this case was both complex and extended, I recommend that Counsel be reimbursed for an amount in excess of the statutory maximum of $9,700.00 in this case. Based upon my review of the time sheets, the Ex-Parte Motion, the docket and filings in this case, I RECOMMEND that Counsel be paid $76,888.80 as fair and final compensation for his work in this case.

In accordance with 28 U.S.C. §636(b)(1), the parties shall have fourteen (14) days from receipt of this Report and Recommendation to serve and file any written objections with the Honorable William P. Dimitrouleas, United States District Judge.

Signed this ___2___ day of February, 2012.

**PETER R. PALERMO**
**SR. UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:

      Howard Schumacher, Esq.
      Lucy Lara, CJA administrator